## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Benjamin Walker,

                Plaintiff,                        **MEMORANDUM OPINION
AND ORDER**

      v.                                      Civil No. 11-671 ADM/TNL

Wanner Engineering, Inc.,

                Defendant.

_____

Bonnie M. Smith, Esq., James H. Kaster, Esq., and Sarah W. Steenhoek, Esq., Nichols Kaster, PLLP, Minneapolis, MN, on behalf of Plaintiff.

Antone M. Melton-Meaux, Esq., and David J. Duddleston, Esq., Jackson Lewis LLP, Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On May 23, 2012, the undersigned United States District Judge heard oral argument on Defendant's Motion for Partial Summary Judgment [Docket No. 24] ("Motion").  For the reasons stated below, Defendant's Motion is denied.

## II.  BACKGROUND[1]

Defendant Wanner Engineering, Inc. ("Wanner") is a Minnesota corporation engaged in the manufacture of specialty pumps and employing ninety-seven employees.  Hancock Decl. [Docket No. 27] ¶¶ 3, 5.  Plaintiff Benjamin Walker ("Walker") worked at Wanner for over eleven years, from 1997 until July 14, 2010.  Compl. [Docket No. 1] ¶¶ 7, 27.  Until 2005,

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  Only the factual background pertinent to the partial summary judgment motion on the defamation claim will be discussed here.

Walker worked under the supervision of Daryl People.  Id. ¶¶ 8–9.  Then beginning in 2005, Walker's supervisor was Todd Bellin ("Bellin").  Id.

On July 9, 2010, Walker's co-worker Eldred Heinen ("Heinen") saw Walker walk toward his car carrying scrap metal.  Compl. ¶ 20; Smith Decl. [Docket No. 30] Ex. E ("Heinen Dep.") 68:5-69:13.  Prior to this date, Walker had received express permission from his supervisor Bellin to retrieve a piece of scrap metal on at least one occasion and perhaps on multiple occasions over a six-year period.  Compare Smith Decl. Ex. A ("Bellin Dep.") 21:13-23:23 with Smith Decl. Ex. H ("Walker Dep.") 145:6-156:17.  The parties also present conflicting evidence as to whether Walker took scrap metal from inside Wanner's facilities or gathered only the disposed metal in the scrap bin outside.  Walker Dep. 154:24-155:2; Melton-Meaux Decl. [Docket No. 26] Exs. F, H.

After observing Walker take metal parts to his car and drive away, Heinen told a co-worker about it and together they drove to the nearest scrap dealer, Realliance Steel.  Heinen Dep. 70:18-72:18.  At the scrapyard, Heinen determined that someone of Walker's description had recycled scrap metal.  Heinen Dep. 73:19-77:2.  Heinen then relayed what he had seen and learned to a manager, Ronald Murray ("Murray").  Heinen Dep. 77:23-78:3.

On July 12, 2010, Murray went to Realliance Steel and obtained a Purchase Ticket Profile which detailed the scraps Walker had exchanged at the scrapyard from March 11, 2010 to July 9, 2010.  Smith Decl. Ex. N ("Purchase Ticket Profile"); Smith Decl. Ex. D ("Hancock Dep.") 95:10-96:9.  These exchanges totaled more than $2,300.  See Purchase Ticket Profile. Bellin returned to the office on July 13, 2010, and that same day Murray, Bellin, Joe Grewe ("Grewe"), and Don Hancock ("Hancock"), Wanner's controller and human resources representative, met to discuss the issue.  Bellin Dep. 144:22-146:12.  Bellin recommended that it

was appropriate to terminate Walker and have him removed from the facilities; Grewe agreed.

Bellin Dep. 145:6-17.  Bellin called the police, informing them that an employee had stolen from

the company and would need to be removed from the building.  Bellin Dep. 146:12-17.

Two police officers came to Wanner within a few minutes, and Bellin and Hancock met

with them for twenty minutes to discuss Walker.  Bellin Dep. 148:3-20.  A few hours after the

meeting, three officers returned, having determined that the evidence supported probable cause.

Bellin Dep. 157:3-9; Melton-Meaux Decl. Ex. K ("Minneapolis Police Dep't Case Report").

Bellin and the officers found Walker in the restroom, and Walker was arrested and removed from

the facility without incident.  Bellin Dep. 157:21-160:10.  Sometime on July 15, 2010, Grewe

allegedly called a general assembly of Wanner employees and told them that Walker was

terminated and arrested because he had "been stealing from Wanner for years."  Walker Dep.

198:3-199:13.

On March 18, 2011, Walker filed his Complaint alleging various claims of race

discrimination and defamation.  Defendant moves for summary judgment solely on the

defamation claim.

## III.  DISCUSSION

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).  On a motion for summary judgment, the court views the evidence in the

light most favorable to the nonmoving party and grants all reasonable inferences in the

nonmovant's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The

nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  <u>Krenik v. Cnty. of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995) (quotation omitted).

### B.  Walker's Defamation Claim

Wanner does not contest any of the factual elements of defamation claim, but rather argues that Walker's defamation claim fails because the alleged statements are protected by qualified privilege.  Wanner also posits that the defamation claim has not been pleaded with specificity, that the statements are inadmissible hearsay, and that the defamation claim is preempted by the Minnesota Human Rights Act's ("MHRA") exclusivity provision.  In response, Walker defends his defamation claim, stating that qualified privilege either does not apply here or has been defeated through a showing of actual malice.  Walker also contends that he has pleaded his claim with the required specificity, that the statements are not hearsay, and that the MHRA exclusivity provision does not preempt his defamation claim because the facts and obligations are different.  These arguments are treated individually below.

### 1.  Qualified Privilege

To prove defamation, a plaintiff must establish the following elements: (1) a false statement; (2) communicated to someone other than plaintiff; (3) which tends to harm plaintiff's reputation or lower his esteem in the community.  <u>Stuempges v. Parke, Davis & Co.</u>, 297 N.W.2d 252, 255 (Minn. 1980).  The plaintiff bears the burden of establishing each element. <u>Benson v. Nw. Airlines, Inc.</u>, 561 N.W.2d 530, 537 (Minn. Ct. App. 1997).

One who makes a defamatory statement is not liable if the statement was communicated under circumstances that make it qualifiedly privileged, as long as that privileged is not abused. <u>Bol v. Cole</u>, 561 N.W.2d 143, 149 (Minn. 1997) (citations omitted).  A defamatory statement is

covered by qualified privilege if made in good faith and "upon a proper occasion, from a proper motive, and . . . based upon reasonable or probable cause." Stuempges, 297 N.W.2d at 256–67 (quoting Hebner v. Great N. Ry. Co., 80 N.W. 1128, 1129 (Minn. 1899)). An employer's good-faith report to a law enforcement officer of suspected criminal activity is protected by qualified privilege, because the public interest outweighs the risk that the reports might be defamatory. Smits v. Wal-Mart Stores, Inc., 525 N.W.2d 554, 557 (Minn. Ct. App. 1994). "[C]ommunication to employees about the reasons for another employee's discharge are also qualifiedly privileged." Ewald v. Wal-Mart Stores, Inc., 139 F.3d 619, 623 (8th Cir. 1998). An employer lacks probable or reasonable grounds for making a defamatory statement if that employer has failed to investigate and instead relied only on other potentially biased employees' statements or hearsay from unidentified sources. Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 380 (Minn. 1990). The determination of whether qualified privilege exists is a matter of law for the court to decide. Lewis v. Equitable Life Assurance Soc'y of the U.S., 389 N.W.2d 876, 889 (Minn. 1986).

Walker alleges that Wanner made two defamatory statements, the first being Grewe's statements to Walker's co-workers that he was terminated for stealing and the second being Bellin's statement to police that Walker had stolen from the company. Compl. ¶¶ 25, 28, 49. Both statements are covered by qualified privilege. Grewe's statements to Wanner employees about Walker's termination, as well as Bellin's statements to the police, were both made upon a proper occasion. See Ewald, 139 F.3d at 623; Smits, 525 N.W.2d at 557. Additionally, the statements were properly motivated. Reporting suspected theft to the police and informing employees of the reason for another employee's termination are proper motives and fall under

the qualified privilege to defamation.

Walker attacks the reasonableness of Wanner's investigation underlying both these statements, claiming that the investigation did not give Wanner reasonable or probable cause because Wanner failed to interview Walker and because some of the evidence was volunteered by individuals Walker accuses of being racially discriminatory to him.  Walker focuses on a single sentence from <u>Wirig</u>, which states that, "In all cases where we have determined that probable cause existed, the evidence showed that investigative steps had been taken, including personal questioning of the affected employee, in an effort to ascertain the accuracy of statements made about the employee's conduct."  <u>Wirig</u>, 461 N.W.2d at 381.  Walker cites numerous cases which have parroted this language, but Wanner responds that each of these cases rejected qualified privilege for a lack of investigation, not because an investigation without an interview of the suspected employee is *per se* an unreasonable investigation.  <u>See</u> <u>id.</u> at 380 ("The facts here indicate that <u>no</u> investigation occurred to substantiate the charges that Wirig had stolen merchandise.") (emphasis added); <u>Cox v. Crown CoCo, Inc.</u>, 544 N.W.2d 490, 498 (Minn. Ct. App. 1996) (finding no qualified privilege where the employer "did not investigate [its] suspicions or confront Cox with [its] accusations before [it] made the defamatory statements to the other employees"); <u>Keuchle v. Life's Companion P.C.A., Inc.</u>, 653 N.W.2d 214, 220 (Minn. Ct. App. 2002) (determining employer lacked privilege where it "did not conduct a thorough investigation, [and] failed to interview respondent, and ignored the supervisor's statement that she made a request, rather than gave a direct order").  An investigation is not unreasonable solely because it lacks an interview of the affected employee.  <u>Desmonde v. Nystrom & Assocs., Ltd.</u>, No. A09-0221, 2009 WL 2596059, at *5 (Minn. Ct. App. Aug. 25, 2009) (finding an

investigation reasonable despite the employer's failure to interview relevant employees).

Here, the alleged defamatory statements were made on the basis of a reasonable investigation which included an eyewitness statement, investigation conducted by three different employees, and the Purchase Ticket Profile verifying that Walker had repeatedly taken scraps to Realliance Steel.  Although an investigation where Walker was confronted in person about the allegations would have been more thorough, the investigation here was sufficiently thorough and gave reasonable or probable cause for the statements at issue.

Qualified privilege may be lost, however, if abused.  <u>Lewis</u>, 389 N.W.2d at 890.  Abuse is established if the plaintiff demonstrates the defendant acted with actual malice.  <u>Ewald</u>, 139 F.3d at 623.  Actual malice exists when the statements were made out of "ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff."  <u>Stuempges</u>, 297 N.W.2d at 257 (quotation omitted).  "A qualified privilege can be lost if statements are not made in furtherance of the purpose that the privilege protects."  <u>Bahr v. Boise Cascade Corp.</u>, 766 N.W.2d 910, 926 (Minn. 2009) (citation omitted).  Malice can be established through evidence extrinsic to the statement itself or intrinsic evidence such as "the exaggerated language of the [statement], the character of the language used, the mode and extent of publication, and other matters in excess of the privilege."  <u>Bol</u>, 561 N.W.2d at 150 (quotation and citations omitted).

Walker claims that Bellin and Heinen racially discriminated against him, and the undisputed record supports that at least Heinen had a history of making racially discriminatory statements.  <u>See, e.g.</u>, Bellin Dep. 37:24-54:4; Smith Decl. Ex. K.  Whether Bellin had been racially discriminatory toward Walker in the past is disputed.  <u>Compare</u> Compl. ¶¶ 11–13; Walker Dep. 85-113 <u>with</u> Bellin Dep. 38:3-43:23.  Walker has not alleged or offered any

evidence to suggest that Grewe had a bias against him.   Therefore, the extrinsic evidence fails to support that Grewe acted out of actual malice, but a factual dispute remains concerning whether Bellin bore malice toward Walker.

As far as intrinsic evidence, the mode and extent of the communications and the character of the language used do not suggest actual malice.  However, both Grewe and Bellin made somewhat exaggerated statements.  Grewe allegedly said that Walker had been stealing for years, when Wanner only had documentary evidence of the four-month period contained in the Purchase Ticket Profile.  Walker Dep. 198-99; see also Purchase Ticket Profile.  Also, Bellin may have told police that Walker had taken the scraps from "inside the business," a fact issue which remains in dispute.  Compare Minneapolis Police Dep't Case Report ("[E]mployee . . . stole scrap items from inside the business.")  with Bellin Dep. 146:14-17 ("I told them . . . we had an employee that had stole from the company.").

Given the totality of the evidence, the issue of whether Bellin's statements were motivated by actual malice remains a factual dispute.  Both the intrinsic and extrinsic evidence are divided as to whether Bellin acted out of actual malice or merely for the proper purpose of reporting a suspected thief.  It is thus premature to decide this issue at summary judgment.

However, neither the extrinsic nor the intrinsic evidence suggest that Grewe's statements to Wanner employees at an all-staff meeting were motivated by actual malice.  Wanner did not have a written policy covering scrap material disposal, Heinen Dep. 52:5-9, and it is disputed whether the unwritten policy was clearly communicated to employees.  Heinen Dep. 52:10-53:7; Bellin Dep. 243:23-244:21.  Given the absence of any evidence suggesting Grewe harbored ill will against Walker, the record supports that Grewe's statements to Wanner employees about

Walker's termination were not a product of malice but were used to disseminate Walker's

unwritten scrap material policy and elucidate the reasons for a co-worker's termination.

Therefore, Grewe's statements are covered by qualified privilege.

### 2. Pleading's Specificity

Wanner also moves for summary judgment on Walker's defamation claim, arguing that

the defamation claim has not been pleaded with specificity.  In Minnesota, defamation claims

must be pleaded with specificity, including who made the defamatory statements, to whom were

they made, and where.  Pinto v. Internationale Set, Inc., 650 F.Supp. 306, 309 (D. Minn. 1986)

(citing Asay v. Hallmark Cards, 594 F.2d 692, 698–99 (8th Cir. 1979)); Schibursky v. Int'l Bus.

Mach. Corp., 820 F.Supp. 1169, 1181 (D. Minn. 1993).  "The fact that [plaintiff] failed to recite

the exact language spoken is not fatal to her defamation claim."  Id.  The purpose of the

specificity requirement for a claim of defamation is to provide sufficient specificity in order to

evaluate whether a privilege applies, Asay, 594 F.2d at 699, as well as to put defendants on

notice of the scope of the defamation claim.  Schibursky, 820 F.Supp. at 1181.

The allegations in Walker's Complaint satisfy the pleading specificity requirements.  The

Complaint clearly states that Bellin "called the police."  Compl. ¶¶ 25, 49.  Additionally, the

Complaint specifies that Joe Grewe (misspelled as "Joe Gurry" in the Complaint) told Walker's

co-workers of his termination.  Id. ¶¶ 28, 49.  Although the "where" is not expressly stated for

either defamation claim, the context of both allegations put Wanner on notice that the

defamatory statements were both made within Wanner's facility; this has been explicated by

deposition testimony.  See Bellin Dep. 146:4-7 (indicating that Bellin called the police from

Wanner); Walker Dep. 198:4-200:9 (stating that Joe Grewe made the statement at an

"assembly").  Walker's defamation claims have been pleaded with sufficient specificity.

### 3. Hearsay

Wanner next contends that Walker's only evidence substantiating Grewe's allegedly defamatory statements at an employee meeting is inadmissible hearsay.  Hearsay is "a statement . . . offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  When the significance of a statement lies in the fact that it was made, not in the truth of what was said, the statement is not hearsay.  See Fed. R. Evid. 801 Advisory Committee Note (1972); Luster v. Retail Credit Co., 575 F.2d 609, 615 (8th Cir. 1978).  Statements which are inadmissible hearsay must be disregarded by a court deciding summary judgment.  In re Trusts A & B of Divine, 672 N.W.2d 912, 921 (Minn. Ct. App. 2004).

The statements establishing that Grewe made defamatory statements at an employee assembly are not hearsay because they are not being offered for their truth.  Walker states that Darrick Granison, another Wanner employee, told him that Grewe informed the employees Walker had been terminated because he had been stealing from Wanner for years.  Walker Dep. 198:4-200:9.  These statements are not being offered for their truth; in fact, Walker ardently contests the veracity of Grewe's statement, denying that he stole anything from Wanner.  Rather, the statements are being offered to show that Grewe made the statements to the employees.  Accordingly, this statement is nonhearsay and is admissible.

### 4. MHRA Exclusivity Preemption

Wanner also asserts that Walker's defamation claim is barred by the MHRA's exclusivity provision.  Under the MHRA,

> The provisions of [the MHRA] shall be construed liberally for the
> accomplishment of the purposes thereof. Nothing contained in [the MHRA] shall

> be deemed to repeal any of the provisions of the civil rights law or of any other law of this state relating to discrimination because of race, creed, color, religion, sex, age, disability, marital status, status with regard to public assistance, national origin, sexual orientation, or familial status; but, as to acts declared unfair by sections 363A.08 to 363A.19, and 363A.28, subdivision 10, the procedure herein provided shall, while pending, be exclusive.

Minn. Stat. § 363A.04.  Minnesota courts have determined that the MHRA's exclusivity provision preempts a common law cause of action if the factual basis and injuries of the common law claim would support an MHRA violation, and if the obligations owed the plaintiff by the defendant are practically the same under both the MHRA and the common law claim.  Pierce v. Rainbow Foods Group, Inc., 158 F. Supp. 2d 969, 975–76 (D. Minn. 2001).  The purposes of the MHRA, one of which is to "foster the employment of all individuals in this state in accordance with their fullest capacities, regardless of their race . . . " Act of April 19, 1955, ch. 516, § 1, 1955 Minn. Laws 803, do not support and are not effectuated by the preemption of an unrelated common law claim, see Wirig, 461 N.W.2d at 378–79.

As stated before, the elements of defamation are a false statement communicated by defendant to a third party that tends to harm the plaintiff's reputation or lower his esteem in the community.  Stuempges, 297 N.W.2d at 255.  Walker's MHRA claim alleges an unfair employment practice in violation of  Minn. Stat. § 363A.08.  This requires showing that because of the plaintiff's race, an employer "discriminat[ed] against a person . . . with respect to hiring, apprenticeship, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment."  Minn. Stat. § 363A.08, subd. 2.  Specifically, Walker alleges that Wanner created a hostile work environment, which requires establishing that (1) plaintiff is a member of a protected class, (2) plaintiff was subjected to unwelcome harassment, (3) the conduct was because of plaintiff's membership in the protected class, and (4) the conduct affected the term,

condition, or privilege of plaintiff's employment.  <u>Carpenter v. Con-Way Cent. Express, Inc.</u>, 481 F.3d 611, 617–18 (8th Cir. 2007).

Neither the factual basis and injuries nor defendant's obligations to plaintiff are the same in a claim for defamation and a claim for unfair employment practice under the MHRA.  The MHRA does not require a false statement of any kind, and a defamatory statement may be defamatory regardless of the plaintiff's race or whether the defendant's actions were motivated by race.  Additionally, Walker's defamation claim in Count IV is based on Grewe's statements at an employee assembly and Bellin's statements to police, whereas his MHRA claim in Count II is premised on a hostile work environment.  Further, an employer's duty not to defame its employees is distinct from its duty not to create a hostile work environment or discriminate on the basis of race.  Given the discrete bases and employer obligations under these two claims, the MHRA's exclusivity provision does not preempt his defamation claim.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:** Defendant's Motion for Partial Summary Judgment [Docket No. 24] is **DENIED**.

BY THE COURT:


     <u>      s/Ann D. Montgomery      </u>
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 12, 2012.